UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION



FILED
APR 07 2014

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JULIE M. WALFORD, | CIV 13-1002 |
| Plaintiff, | |
| -vs- | OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of defendant's final decision denying plaintiff's claim for disability insurance benefits. I have conducted a *de novo* review of the record. I find that the Commissioner's decision is supported by substantial evidence on the record as a whole.

## BACKGROUND

Plaintiff was born in 1957. She is a high school graduate and studied medical assisting in vocational school for one year. She worked part time from 1976 to 1986 and worked full time from 1987 to 2009. She has experience doing computer data entry for a sales and service business, doing claims work for an insurance company, being an administrative assistant/office manager for a parts and service company and working as a buyer/planner (also a computer job) for a manufacturer.

In September 2009, she accepted her employer's offer for a voluntary layoff with three months severance pay and she never went back to work. She applied for disability insurance benefits on February 19, 2010, alleging a disability onset date of September 19, 2009.

At the time of her disability claim plaintiff was taking medications for depression, interstitial cystitis (painful bladder syndrome), anxiety, fibromyalgia, rapid heart beat and high cholesterol. She explained in her claim:

> The pain of fibromyalgia, depression and anxiety issues are too intense to work at a job. My depression and anxiety issues are not changing with medication because of my sensitivity to these medications, which involves side effects I cannot handle. For three months I have been working on getting better by changing medications and exercises. My depression and anxiey (sic) is not improving. The fibromyalgia pain is still there. The change in weather continuously affects my pain. I have had these symptoms for years and they are not improving, but they are getting worse.
>
> * * *
>
> The pain I feel is nerve pain and there is no cure for it. This is my main disability. I cannot work any more because the pain keeps getting worse every year. Which (sic) makes my depression and anxiety worse.

Dr. Kevin Whittle issued a residual functional capacity assessment on March 26, 2010, wherein he listed plaintiff's primary diagnosis as fibromyalgia, secondary diagnosis as irritable bowel syndrome, and other alleged impairments as GERD and interstitial cystitis. Dr. Whittle determined that:

> The plaintiff has a medically determinable impairment. In her function report she cites no limitations in the independent performance of her ADLs. She is able to make simple meals, do chores and shop. She cited limitations in numerous physical abilities and alleged pain and fatigue. The degree of her alleged limitations is not supported by the records in the file. Her statements are found to be partially credible.

Whittle opined that plaintiff was limited to medium level work with no further limitations.

A psychiatric review and mental residual functional capacity assessment were completed by M. Dilger on April 20, 2010. It was determined that plaintiff had medically determinable depression and anxiety impairments that had improved. The degree of functional limitation was described as mild in plaintiff's daily living activities and social functioning and moderate in maintaining concentration and persistence of pace. The assessment states that the evidence does not establish that any of plaintiff's mental health conditions were chronic or were more than moderately limiting.

Plaintiff's claim was denied on April 27, 2010. Plaintiff filed a request for reconsideration on May 13, 2010.

Jerry Buchkoski, Ph.D., conducted a case analysis of plaintiff's records on June 23, 2010, and concluded that plaintiff was "doing better with changes in medication . . . Major functional impairment appears to be secondary to her medical condition."

Plaintiff's claim was denied on reconsideration on June 28, 2010, after considering new medical reports from June 2010, on the following basis:

> You state that you are disabled due to depression, anxiety, fibromyalgia, dysthymic disorder, interstitial cystitis, gastroesophageal reflux disease and irritable bowel syndrome. While the medical records document problems with [the foregoing medical problems] the records also show successful treatment. While you have pain due to your fibromyalgia it does not severely limit normal daily activities. Your ability to think, remember, understand and communicate is not severely restricted. The evidence does not show any other condition that would severely limit your ability to work.

On September 2, 2010, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), explaining that she disagreed with the denial of benefits

> [B]ecause my pain from fibromyalgia is severe enough that I cannot work.
> It causes anxiety and depression and hard to concentrate on anything else.
> The stress of a job increases the pain and anxiety.

A hearing was held on July 1, 2011, before ALJ Marsha Stroup. Tom Audet, a vocational expert, was present. The Administrative Law Judge ("ALJ") issued a decision on August 9, 2011, denying plaintiff's claim for disability. The ALJ determined that plaintiff has severe impairments of depression and fibromyalgia and that the impairments more than minimally affected her then current ability to perform basic work activities. Her impairments were not "listed" impairments. The ALJ further found that plaintiff has the residual functional capacity to perform sedentary work as long as she avoided work environments that are stressful and as long as she had the ability to alternate between sitting and standing positions as needed.

Plaintiff filed a request to the Appeals Council for review of the ALJ's decision. She contended that the ALJ erred at items 3, 4, and 5:

> I also have anxiety disorder which impairs me to have social contacts outside of immediate family and makes it difficult to get to work. The [antidepressant] helps some, but I can only take a small amount because I am very sensitive and have side effects. ((sic) drowsiness and unsteadiness) The anxiety attack consists of crying and not being able to

> stop or so anxious I cannot concentrate on my job duties . . . I also wish to repeat my statements of my fibromyalgia in the workplace: Most days the pain is so intense that it is difficult to think about anything else. I try standing, stretching, and walking during work and it does not help. This makes me frustrated, anxious and depressed. And those symptoms all together make my fibromyalgia flair up even worse.
>
> The paragraphs on mental impairment, and etc. are missing the fact that I am not working. The combination of daily living and working do not work for me. Now I am able to function daily, but when I was working it was so difficult to just get through the day that I would collapse when I got home and sleep and get depressed because it was so hard to get through the day, if I did . . . Now, I can rest when needed. Also, my coworkers were seeing how much pain I was in, or how anxious, or how sad. Dealing with that part of the work place was just as difficult. And there is always stress and drama at the work place which increases my anxiety and pain.
>
> The medical findings paragraph states that there was improvement. Please note that these findings were stated during the time I was not working. The disabling condition of body pain is still present and the pain reliever only help (sic) for a little while and I cannot take another one until 6 hours later. Please note that the pain and anxiety has gotten worse as I age. The fibromyalgia diagnosis in 2000 and being able to work until 2009 is correct, but please take into consideration my attendance and my leave of absence and my mental state during those years. I was hospitalized in (sic) 3/20/09 through 4/9/09 because I had given up on life. I took short term disability until 5/7/2009. I returned to work in which I had a very hard time coping, but stayed until 9/19/09. I wish I could show my mental and physical conditions while I was working through 2008 and 2009, but this is not the disability date on my application and I am not sure there is enough doctor notes to really show how I (sic) bad I was doing.

The Appeals Council denied her request for review on November 28, 2012. Although the Appeals Council received medical records from October 2012, those records were not relied upon in determining whether plaintiff was disabled as of the date of the ALJ's decision. The ALJ's decision is deemed the final decision of the Commissioner. Phillips v. Colvin, 721 F.3d 623, 625 (8th Cir. 2013). Plaintiff filed the instant appeal in federal district court.

## DECISION

An individual is considered to be disabled if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual shall be determined to be disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

"To be eligible for disability insurance benefits, a claimant has the burden of establishing the existence of a disability under the Act." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Judicial review of the Commissioner's decision that claimant has failed to establish by a preponderance of the evidence that she is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole. Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." Kamann v. Colvin, 721 F.3d at 950 (*quoting* Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir.1998)). "We consider both evidence that detracts from the ALJ's decision, as well as evidence that supports it, but we will not reverse simply because some evidence supports a conclusion other than that reached by the ALJ." McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (internal citations omitted). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

The ALJ used the familiar five-step sequential evaluation to determine disability:

> In step one, the ALJ decides whether the claimant is currently engaging in substantial gainful activity; if the claimant is working, [she] is not eligible for disability insurance benefits. In step two, the ALJ determines whether the claimant is suffering from a severe impairment. If the claimant is not suffering a severe impairment, [she] is not eligible for disability insurance benefits. At the third step, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations (the "listings"). If the claimant's impairment meets or equals one of the listed impairments, [she] is entitled to benefits; if not, the ALJ proceeds to step four. At step four, the ALJ determines whether the

5

> claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. If the claimant remains able to perform that past relevant work, [she] is not entitled to disability insurance benefits. If [she] is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC. If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability insurance benefits.

McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011) (internal C.F.R. citations omitted).

Plaintiff contends the ALJ erred in her identification of plaintiff's medically determinable impairments. The ALJ determined that plaintiff has severe impairments of depression and fibromyalgia. The ALJ did address her other claimed conditions but held that, since those conditions are not listed impairments, they would be considered instead as part of her residual functional capacity.

Plaintiff contends the ALJ erred by failing to properly evaluate plaintiff's subjective complaints of pain. The ALJ did not find the plaintiff's claims regarding the extent of her limitations to be credible.

> Although an ALJ may reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make an express credibility determination detailing the reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the *Polaski* factors." *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir.1998).

Burress v. Apfel, 141 F.3d 875, 880-81 (8th Cir. 1998). "Polaski requires the ALJ to consider: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. Baumgarten v. Chater, 75 F.3d 366, 368 (8th Cir. 1996) (*citing* Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995)." Burress v. Apfel, 141 F.3d at 881 n. 10. The ALJ "may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints . . . The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective

6

> complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Id.* "The ALJ [is] not required to discuss methodically each Polaski consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." McDade v. Astrue, 720 F.3d at 998 (*quoting* Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)).

The ALJ did consider the foregoing, although not by specifically naming the Polaski factors. Plaintiff testified before the ALJ that the fibromyalgia caused pain when she worked but had gotten progressively worse. She treated with a chiropractor once every three months and saw a medical doctor to obtain her pain pills. Although she was on Lyrica and Hydrocodone, she described her pain as always between 7 and 10 on a ten point scale. The ALJ did consider plaintiff's claimed pain but determined that she was only mildly restricted by pain. He considered her testimony that her condition improved with exercise, that she was able to live independently, perform household chores, drive, shop, and take care of herself. She spent her time visiting her mother, taking walks with her daughters, and playing with her grandchild.

The ALJ stated that plaintiff's medically determinable impairments could reasonably cause the symptoms she testified to but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment." Under Polaski, the ALJ "may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them." Polaski v. Heckler, 739 F.2d at 1332. In the present case, the objective medical evidence does not support the extent of plaintiff's claimed pain "at all." "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." Perkins v. Astrue, 648 F.3d 892, 900 (8th Cir. 2011) (*quoting* Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996)).

Plaintiff complains that the ALJ wrongly relied upon the fact that she worked for many years despite suffering from fibromyalsia and failed to consider that her condition had gotten more disabling over the years. The record shows that plaintiff did not stop working because her condition had worsened but instead because she was laid off. Further, plaintiff's medical records did not reflect an increasing level of disabling pain. In fact, her medical records repeatedly

7

showed that her fibromyalgia was well-managed with pain medications. Plaintiff's condition was certainly more manageable to her when she was not working. The ALJ incorporated this fact into her finding that plaintiff cannot return to her past relevant work as the demands of such work exceed her functional capacity.

Plaintiff contends the ALJ erred in determining her residual functional capacity. She contends the ALJ failed to consider her claimed disabling effects of fibromyalgia and wrongly relied upon the lack of medical evidence to support the existence of a greater limitation on her functional capacity. However, the ALJ specifically noted that the determination of plaintiff's functional capacity was based upon plaintiff's own testimony. Further, the ALJ's determination was consistent with the independent medical examiners' determination of plaintiff's functional capacity.

Plaintiff testified before the ALJ that her depression went "hand in hand" with the severity of her fibromyalgia symptoms. She claimed she saw a psychologist once a month, although she admitted there were times she did not see her psychologist for six months. She saw a psychiatrist every three months to check on her psychiatric medications. At the time of the hearing, the medications were helping her symptoms but her anti-anxiety medication made her sleepy so she was taking only half the recommended dose twice daily. Plaintiff testified that sometimes her medications make her feel like a "zombie." She testified that she is limited to walking four blocks at a time and that she naps for several hours every day. She stated that she is doing better since she left her job because she does not have "the extra stress, anxiety of the people and their dramas."

Plaintiff claims the ALJ failed to properly consider the limitations caused by her mental health conditions. The ALJ devoted a great portion of her decision evaluating the effect that plaintiff's depression and anxiety had upon her residual functional capacity. The ALJ relied upon an independent functional capacity assessment which concluded that, at most, her mental health conditions had a moderate effect upon her ability to perform job functions.

"It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's" functional capacity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The ALJ determines a claimant's functional capacity "based on all relevant evidence, including

8

medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Id.* Substantial evidence in the record supports the ALJ's determination of plaintiff's functional capacity.

Plaintiff contends the ALJ erred in failing to meet her burden to identify occupations that exist in significant numbers that plaintiff could perform. The ALJ described plaintiff's claimed limitations as well as the limitations the ALJ found to be credible. Included in the questions posed to the vocational expert were inquiries about not only about the effects of fibromyalsia and depression, but also the effects that her claimed anxiety would have on plaintiff's ability to work an eight hour day. The vocational expert testified that plaintiff had clerical, receptionist, and data entry skills which were transferrable to less stressful jobs that were abundant in the regional economy. Plaintiff testified that she would be unable to sit for eight hours a day or for even four hours. She claimed she could only tolerate a part-time job. The ALJ specifically inquired of the vocational expert whether there existed jobs abundant in the economy where plaintiff could alternate sitting and standing and which would cause less anxiety than her former occupation and the vocational expert identified jobs meeting the criteria.

Ultimately, plaintiff "bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." Kamann v. Colvin, 721 F.3d at 950. She did not satisfy her burden. As is true in many disability claims, plaintiff is experiencing medical issues that cause her pain and difficulty. The issue is, however, whether her medical conditions prevent her from working. The ALJ determined that her conditions are not disabling within the meaning of the Social Security Act and that there are jobs abundant in the regional and national economy that plaintiff could perform despite her limitations. The decision of the ALJ is supported by substantial evidence on the record as a whole.

## CONCLUSION

I find that the Commissioner's decision is supported by substantial evidence on the record as a whole. Accordingly,

IT IS ORDERED:

1) The plaintiff's motion (Doc. 10) for summary judgment is denied.

2) The final administrative decision to the effect that the claimant is not eligible for benefits under the Social Security Act is affirmed.

Dated this 28th day of March, 2014.

BY THE COURT:

*Charles B. Kornmann*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *Barbara J. Poepl*
DEPUTY
(SEAL)